**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF ILLINOIS**

| | |
|---|---|
| Constance Cooper, | ) |
| | ) |
| Plaintiff, | ) Case No. 1:19-cv-04702 |
| | ) |
| v. | ) Judge Andrea R. Wood |
| | ) |
| GGPLP REIT Services, LLC and | ) Magistrate Judge Rowland |
| BPR REIT Services, LLC, incorrectly named | ) |
| General Growth Properties, Inc. and | ) Jury Demand |
| Brookfield Properties Retail Group, | ) |
| | ) |
| Defendants. | ) |
| | ) |

**FIRST AMENDED COMPLAINT**

NOW COMES Plaintiff, Constance Cooper ("Constance"), by and through her attorneys, Paul H. Scheuerlein and Justin C. Kanter of the law firm of Gaido & Fintzen, and for her First Amended Complaint against Defendants, GGPLP REIT Services, LLC ("GGP") and BPR REIT Services, LLC ("BPR"), previously incorrectly named General Growth Properties, Inc. and Brookfield Properties Retail Group, respectively, states as follows:

**PRELIMINARY STATEMENT**

1.    This action is brought pursuant to the Civil Rights Act of 1964, 42 U.S.C. Section 2000e et. seq., as amended by the Civil Rights Act of 1991 ("Title VII"), 42 U.S.C. Section 1981 ("Section 1981"), the Americans with Disabilities Act of 1990 ("ADA"), as amended by the ADA Amendments Act of 2008, 42 U.S.C. §§ 12101 to 12213, and the Family and Medical Leave Act ("FMLA"), 29 U.S.C. § 2601, et seq., to challenge Defendants' unlawful discrimination against Plaintiff based on her race and disability as well as retaliating against her for her opposition to Defendants' unlawful conduct.

2.    GGP hired Constance on September 28, 2015 as an Associate Accountant in the Property Accounting department (Accounts Payable). Despite positive reviews of Constance's

performance, after February of 2016, GGP subjected Constance to extreme scrutiny, to which others were not subjected, on the basis of her race. On July 10, 2018, after almost three years of service to GGP, GGP summarily fired Constance, claiming that Constance had threatened a co-worker in violation of GGP's zero tolerance policy, when in fact the termination was in retaliation for her complaint to management about unequal treatment and harassment.

3. In addition, GGP discriminated and fired Constance in retaliation for her requests for a reasonable accommodation for her disability. As a result, Constance has suffered significant emotional and monetary damages.

## JURISDICTION AND VENUE

4. Jurisdiction of this Court is properly invoked based upon federal question jurisdiction, 28 U.S.C. § 1331.

5. Defendants are "employers" within the meaning of Title VII and the ADA based on their engagement in an industry affecting commerce and their employment of twenty (20) or more employees for each workday in each of twenty (20) or more calendar weeks in the current or preceding calendar year.

6. Venue in this Court is proper because Defendants conduct business in this judicial district and because the claim arises out of incidents occurring in this judicial district. 28 U.S.C. § 1391(b).

## ADMINISTRATIVE REQUIREMENTS

7. On or about April 16, 2019, Plaintiff timely filed a charge of discrimination with the Equal Employment Opportunity Commission ("EEOC"), and has met all of the necessary administrative prerequisites for the filing of this action.

8.     On or about April 23, 2019, the EEOC issued a Notice of Right to Sue to Plaintiff. Plaintiff initially filed this action *pro se* within 90 days of receipt of that notice.

## PARTIES

9.     Constance is a 57-year-old African-American resident of the City of Chicago.

10.     Upon information and belief, Defendant, GGP was a Delaware limited liability company registered to do business in the state of Illinois, with its principal office at 350 N. Orleans, Suite 300, Chicago, Illinois 60654. GGP merged with BPR on or about August 28, 2018.

11.     Upon information and belief, Defendant, BPR, is a Delaware limited liability company registered to do business in the state of Illinois, with its principal office at 350 N. Orleans, Suite 300, Chicago, Illinois 60654. BPR acquired GGP on or about August 28, 2018.

## FACTUAL ALLEGATIONS

12.     Plaintiff began working for GGP on September 28, 2015 as an Associate Accountant in the Property Accounting department (Accounts Payable).

13.     During the first two years of her tenure at GGP, Constance received favorable employee reviews, as follows:

a)     In February 2016, only five months into the job, Constance was found to have met expectations. Her evaluator commented "Connie was able to learn the job, help out when needed and ultimately take on additional properties during her short time on the job. She would ask if there was anything she could do to help others when her workload was light." And "Connie's learning curve was very short. She has become as asset to the team."

b)     By the mid-year review in August 2016, a new supervisor took over. She commented that "Constance has been with GGP a little less than a year now and has gone a long way. She is still learning and constantly asking questions to improve her knowledge of GGP

3

procedures. Earlier this year we changed the properties around amongst the Associate Accountants, she inherited a portfolio with inconsistencies and was able to work with the mall staff to get these cleared up."

c)      By the end of 2016, Constance had improved her ratings from mid-year, and was found to have met expectations. Her evaluator commented "Constance has been with GGP over a year now. Earlier this year we changed the properties around amongst the Associate Accountants, she inherited a portfolio with inconsistencies and was able to work with the mall staff to get these cleared up. Constance did a good job transitioning from Alusta to Basware. She also did a nice job completing the Excel property workbooks and providing detailed information."

d)      By the mid-year review in August 2017, the evaluator commented "Our team's main objectives are to process invoices accurately and provide excellent customer service to our internal and external customers. Constance does process invoices accurately with little to no errors daily. Constance continues to take ownership of her properties and updates her Excel workbooks when needed. Last year I trained Constance in JDE and showed her how to research supplier payment information which helps her answer questions more quickly. She is always available to help out when needed and covered for Cindy while she was on vacation. Constance transitioned from Cart to Concur successfully. She also is detailed when reviewing receipts in Concur for proper support and documentation."

14.      GGP recognized Constance's accomplishments in the following ways:

a)      February 2016 – salary increase of $500.00 and bonus of $640.00.

b)      February 2017 – salary increase of $1,225.00, and bonus of $1,358.00.

c)      February 2018 – salary increase of $1,000.00, and bonus of $927.00.

15.     In March 2016, a new supervisor, Kasia Krzysiak, was assigned to oversee the Associate Accountants, and Constance was subjected to increased scrutiny that others in the department were not subjected.

16.     Kasia Krzysiak began scrutinizing how long Constance was away from her desk, whether Constance was participating in training, doing research in other departments, or participating in corporate culture events, all of which were encouraged by GGP, and activity for which other Associate Accountants were not scrutinized.

17.     Although Constance's previous supervisor allowed her to work from 6:45 to 3:45, and allowed her to make up lost work time over the lunch break, Kasia Krzysiak would not permit it, when others in the department were not so restricted.

18.     In early 2016, GGP changed property assignments among the Associate Accountants and Constance inherited, from a Caucasian co-worker, a portfolio with inconsistencies, which Constance quickly cleared up.

19.     Constance assisted a fellow Associate Accountant, a Caucasian, with her properties while she was on vacation. None of this co-worker's workbooks were completed in the proper manner, making it difficult to properly code her invoices. This was pointed out to Kasia Krzysiak, who did nothing. This was a co-worker against whom Constance was negatively compared in her reviews.

20.     Another Caucasian co-worker, against whom Constance would be compared, left the employ of GGP, and Constance received two-thirds of the co-worker's properties to process. The co-worker's workbooks were not as detailed as Constance's.

21.     Two other Associate Accountants and co-workers of Constance, who were Caucasian, received promotions. Their interactions with customers and clients, although obviously

not up to GGP standards, were not criticized, nor were their portfolios, which were not properly updated.

22.　　In August of 2017, Constance suffered a nervous breakdown as a result of work-related stress. Constance took a leave of absence through November of 2017, pursuant to the provisions of the FMLA, to undergo therapy to address her depression and anxiety.

23.　　When Constance returned to work, she noticed that her chair and gumball machine were gone. This was reported to Constance's supervisors, but nothing was done about returning her personal property to her.

24.　　Finally, in late February 2018, a co-worker admitted that she had the gumball machine, but it was not until March 19, 2018, that the gumball machine was returned to Constance. She was instructed at that time, however, that she could no longer keep the gumball machine in her office cubicle.

25.　　Constance's hours and requests for time off continued to be unfairly scrutinized at a level to which no one else in the department was subject.

26.　　In June of 2018, Constance asked the Human Resources department to investigate her claims that she was subject to unequal treatment, harassment, retaliation, and theft.

27.　　The Human Resources department informed Constance that they found no validity to any of her claims.

28.　　Less than a month later, Constance was called into a meeting with the Human Resources department and informed that one of Constance's co-workers complained that Constance threatened her.

29.     Somehow, the Human Resources department, without talking to Constance, found this complaint to be valid, and a violation of GGP's zero tolerance policy. Constance was immediately terminated from her employment.

## COUNT I

30.     Constance incorporates and realleges Paragraphs 1 through 29 of her Amended Complaint, as if more fully set forth herein.

31.     Constance is African-American and was qualified for her position when she was fired.

32.     The actions of GGP, including, but not limited to, unfairly scrutinizing Constance's work, unfairly scrutinizing Constance's hours and time at her desk, undermining Constance's relationship with her assigned clients, failing to properly compensate her in relation to fellow Associate Accountants, and terminating her, are unlawful employment practices in that they likely have the effect of discriminating against, depriving, and tending to deprive equal employment to, and otherwise adversely affecting Constance because of her race in violation of Title VII of the Civil Rights Act of 1964 as amended, 42 U.S.C. § 2000e, et. seq.

33.     Constance suffered damages as a result of GGP's unlawful discriminatory actions, including emotional distress, past and future lost wages and benefits, costs of bringing this action, and other consequential damages.

34.     GGP intentionally violated Constance's rights under Title VII, with malice or reckless indifference, and, as a result, is liable for punitive damages.

## COUNT II

35.     Constance incorporates and realleges Paragraphs 1 through 34 of her Amended Complaint, as if more fully set forth herein.

36.     From mid-June of 2018 through early July 2018, Constance engaged in protected activity by complaining to the Human Resources department about the unfair treatment to which she had been subjected based on her race.

37.     On July 9, 2018, the Human Resources department informed Constance that there was no validity to any of her claims.

38.     The next day, July 10, 2018, Constance was called into a meeting with Tara Marszewski and Jeffrey Skore, and Constance was summarily fired for allegedly threatening a co-worker.

39.     GGP's alleged reason for terminating Constance's employment is pretextual and baseless. GGP fired Constance because she complained about race discrimination.

40.     Constance suffered damages as a result of GGP's unlawful discriminatory actions, including emotional distress, past and future lost wages and benefits, costs of bringing this action, and other consequential damages.

41.     GGP intentionally violated Constance's rights under Title VII, with malice or reckless indifference, and, as a result, is liable for punitive damages.

## COUNT III

42.     Constance incorporates and realleges Paragraphs 1 through 41 of her Amended Complaint as if more fully set forth herein.

43.     Section 1981 guarantees all persons the same right to make and enforce contracts as non-African Americans. The term "make and enforce" contracts includes the making, performance, modification, and termination of contracts, and the enjoyment of all benefits, privileges, terms, and conditions of the contractual relationship.

44.     GGP intentionally discriminated against Constance based on her race and denied her right to make and enforce contracts by conduct, including but not limited to, unfairly scrutinizing Constance's work, unfairly scrutinizing Constance's hours and time at her desk, undermining Constance's relationship with her assigned clients, failing to properly compensate her in relation to fellow Associate Accountants, and terminating her.

## COUNT IV

45.     Constance incorporates and realleges Paragraphs 1 through 44 of her Amended Complaint as if more fully set forth herein.

46.     As a result of Constance having complained to the Human Resources department about the unfair treatment to which she had been subjected based on her race, GGP terminated Constance.

47.     The aforementioned acts of GGP constitute retaliation against Constance based on her opposition to the discrimination she suffered on the basis of her race, and deprived Constance the right to make and enforce contracts, and subjected Constance to unlawful retaliation in violation of Section 1981.

## COUNT V

48.     Constance incorporates and realleges Paragraphs 1 through 47 of her Amended Complaint as if more fully set forth herein.

49.     On or about July 24, 2014, Constance was diagnosed with depression, making her a qualified individual with a disability within the meaning of 42 U.S.C. § 12102 of the ADA. Constance could perform the essential functions of her position with or without a reasonable accommodation.

50.     Constance informed GGP about her disability when she was hired and requested a reasonable accommodation to enable her to attend therapy sessions, which was initially approved by GGP.

51.     However, in March 2016, a new supervisor, Kasia Krzysiak, was assigned to oversee the Associate Accountants, and Constance was subjected to increased scrutiny that others in the department were not subjected.

52.     Kasia Krzysiak began scrutinizing how long Constance was away from her desk, whether Constance was participating in training, doing research in other departments, or participating in corporate culture events, all of which were encouraged by GGP, and activity for which other Associate Accountants were not scrutinized.

53.     Although Constance's previous supervisor allowed her to work from 6:45 to 3:45, and allowed her to make up lost work time over the lunch break, Kasia Krzysiak would not permit it, when others in the department were not so restricted.

54.     As a result of this harassment, Constance was forced to abandon her therapy sessions, which had a strong negative impact on her health.

55.     Constance suffered damages as a result of GGP's unlawful discriminatory actions, including emotional distress, past and future lost wages and benefits, costs of bringing this action, and other consequential damages.

56.     GGP intentionally violated Constance's rights under Title VII, with malice or reckless indifference, and, as a result, is liable for punitive damages.

## COUNT VI

57.     Constance incorporates and realleges Paragraphs 1 through 56 as if more fully set forth herein.

58.     Constance was qualified for her position when GGP fired her.

59.     From mid-June 2018 through early July 2018, Constance engaged in protected activity by complaining to the Human Resources department about discriminatory treatment based on Constance's disability and requests for reasonable accommodation.

60.     Within a month after Constance complained of disability discrimination, GGP summarily fired Constance on July 10, 2018.

61.     GGP's alleged reason for terminating Constance's employment is pretextual and baseless. GGP fired Constance because she complained of disability discrimination on July 9, 2018.

62.     Constance suffered damages as a result of GGP's unlawful discriminatory actions, including emotional distress, past and future lost wages and benefits, costs of bringing this action, and other consequential damages.

63.     GGP intentionally violated Constance's rights under Title VII, with malice or reckless indifference, and, as a result, is liable for punitive damages.

## COUNT VII

64.     Constance incorporates and realleges Paragraphs 1 through 63 of her Amended Complaint as if more fully set forth herein.

65.     In the year prior to July 10, 2018, Constance worked for GGP on a full-time basis, and had worked more than 1,250 hours.

66.     GGP employed more than 50 employees within a 75-miles radius of Constance's workplace.

67.     In the beginning of August 2017, Constance suffered a nervous breakdown as a result of work-related stress.

68.    As a result, Constance notified GGP that she would need to take leave starting on or about September 4, 2017 for 12 weeks.

69.    Constance was granted and took the 12 weeks of FMLA leave.

70.    On November 27, 2017, Constance returned from her FMLA leave. Kasia Krzysiak became overly critical of Constance's work product and performance.

71.    Prior to Constance's FMLA, Constance was under heightened scrutiny, but the scrutiny intensified after she returned.

72.    Although nothing had changed about Constance's performance, Kasia Krzysiak, regularly found fault with Constance's work.

73.    As a result, Constance complained to the Human Resources department about the discriminatory treatment, including the PIP that had been filed in August 2017.

74.    On July 9, 2018, the Human Resources department informed Constance that there was no validity to any of her claims.

75.    The next day, July 10, 2018, Constance was called into a meeting with Tara Marszewski and Jeffrey Skore, and Constance was summarily fired for allegedly threatening a co-worker.

76.    GGP's alleged reason for terminating Constance's employment is pretextual and baseless. GGP fired Constance because she complained about race discrimination.

77.    GGP's conduct constitutes unlawful retaliation against Constance in violation of Constance's rights under the FMLA. 29 U.S.C. § 2615 (a).

78.    Constance suffered damages as a result of GGP's unlawful discriminatory actions, including emotional distress, past and future lost wages and benefits, costs of bringing this action, and other consequential damages.

Wherefore, Plaintiff, Constance Cooper, respectfully requests judgment against Defendant GGPLP REIT Services, LLC, as follows:

A.    All wages and benefits Plaintiff would have received but for the discrimination, including but not limited to back pay, front pay, future pecuniary losses, and prejudgment interest;

B.    Compensatory damages in an amount to be determined at trial.

C.    Punitive damages on the basis of Defendants' willful and intentional conduct;

D.    An award of reasonable attorneys' fees, costs, and litigation expenses; and

E.    Such other relief as the Court may deem just or equitable.

## COUNT VIII

79.    Constance incorporates and realleges Paragraphs 1 through 78 of her Amended Complaint as if more fully set forth herein.

80.    Constance is informed and believes that, on or about August 28, 2018, GGP was acquired by Brookfield Property Partners in a deal valued at 27.5 billion, and management of GGP's entire portfolio was transferred from Brookfield Property Partners to BPR.

81.    Constance is informed and believes that Brookfield Property Partners acquired GGP in its entirety, including assets and liabilities, and GGP no longer existed after the merger.

82.    Given the amount of consideration paid by Brookfield Property Partners, Constance is informed and believes that GGP would have had the ability to provide relief on Constance's claim.

83.    BPR's principal office, after it acquired GGP, was at the same location as GGP's principal place of business, which was 350 N. Orleans, Suite 300, Chicago IL 60654.

84.    Constance is informed and believes that there has been a substantial continuity of business operations from GGP to BPR after the acquisition, and Constance is further informed and

believes that BPR used substantially the same work force and supervisory personnel, doing substantially the same jobs under the same working conditions, and working with the same product.

85. As the successor to GGP, BPR is liable for Constance's claims as set forth in Counts I through VII of the Amended Complaint.

Wherefore, Plaintiff, Constance Cooper, respectfully requests judgment against Defendant BPR REIT Services, LLC, as follows:

F. All wages and benefits Plaintiff would have received but for the discrimination, including but not limited to back pay, front pay, future pecuniary losses, and prejudgment interest;

G. Compensatory damages in an amount to be determined at trial.

H. Punitive damages on the basis of Defendants' willful and intentional conduct;

I. An award of reasonable attorneys' fees, costs, and litigation expenses; and

J. Such other relief as the Court may deem just or equitable.

Plaintiff demands trial by jury.

Respectfully submitted,

By: _____

Paul H. Scheuerlein (6188425)
pscheuerlein@gaido-fintzen.com
Gaido & Fintzen
30 N. LaSalle Street, Suite 3010
Chicago, IL 60602
Telephone: (312) 346-7855